458 N.W.2d 339 (1990)
In the Matter of the CONSERVATORSHIP OF the ESTATE OF Martin V. VAKSVIK, Incompetent.
FIRST NATIONAL BANK IN GRAND FORKS, Petitioner and Appellee,
v.
VETERANS ADMINISTRATION CENTER, FARGO, NORTH DAKOTA, Respondent and Appellant (Four Cases).
In the Matter of the CONSERVATORSHIP OF the ESTATE OF Samuel A. ABBEY, Incompetent.
In the Matter of the CONSERVATORSHIP OF the ESTATE OF Ernest J. SCHAUER, Incompetent.
In the Matter of the CONSERVATORSHIP OF the ESTATE OF Raymond M. KNUDSON, Incompetent.
Civ. Nos. 900082-900085.
Supreme Court of North Dakota.
July 3, 1990.
*340 Arnason Law Office, Grand Forks, for petitioner and appellee; argued by Joel F. Arnason, appearance by Steven J. Remark, First Nat. Bank, Grand Forks.
Barbara Licha Perkins (argued) and Branson H. Moore (appearance), U.S. Dept. *341 of Veterans Affairs, Fargo, for respondent and appellant.
ERICKSTAD, Chief Justice.
The United States Department of Veterans Affairs ["VA"] appeals from an order allowing the full amount of conservator's fees requested by First National Bank ["Bank"] in four conservatorships. We reverse and remand for further proceedings consistent with this opinion.
Samuel Abbey, Raymond Knudson, Ernest Schauer, and Martin Vaksvik are disabled veterans. The Bank has served as conservator of the estate of each of the four veterans for a lengthy period of time. Each of the veterans receives monthly benefits from VA, which are paid to the conservator Bank.
The Bank extracts fees for its services as conservator. Although the record is somewhat vague on this point, it appears that the Bank currently charges fees of five percent of monthly benefits[1] as they are received; seven percent on investment income; three-quarters of one percent of corpus up to $200,000, and six-tenths of one percent of corpus over $200,000; a $150 "administrative fee"; and a $10 "holding fee" for each insurance policy.
VA challenged the Bank's fees in county court, asserting that conservator's fees in estates of wards receiving VA benefits are limited by Section 30.1-29-14(1), N.D.C.C. The county court allowed the full amount of fees requested by the Bank in each conservatorship, and VA appealed.[2]
Compensation of conservators is governed by Section 30.1-29-14, N.D.C.C.:
"Compensation and expense.1. When the estate is derived, in whole or in part, from money paid or being paid by the veterans' administration to the conservator or his predecessor for the benefit of the protected person, the compensation allowed from such money to the conservator shall be limited to five percent of the amount of money received from the agency during the period covered by the account, except that the court may allow a minimum compensation of not to exceed fifty dollars per year. No commission or compensation will be allowed for receipt of moneys or other assets received from a prior fiduciary nor upon the amount received from liquidation of loans or other investments.
"2. If not otherwise compensated for services rendered, any visitor, lawyer, physician, conservator, or special conservator appointed in a protective proceeding is entitled to reasonable compensation from the estate."
The parties have presented various arguments on the interrelationship between subsections (1) and (2). Essentially, VA asserts that fees in a conservatorship consisting in whole or in part of VA-derived funds are limited to five percent of the amount of VA benefits. The Bank responds that subsection 1 applies only to direct charges to the monthly benefits and does not restrict other fees and charges.
In construing statutory language, our primary concern is to ascertain the intent of the Legislature. Smith v. North Dakota Workers Compensation Bureau, 447 N.W.2d 250, 253 (N.D.1989); County of Stutsman v. State Historical Society, 371 N.W.2d 321, 325 (N.D.1985). A statute is to be read to give effect to each of its provisions whenever fairly possible. County of Stutsman, supra, 371 N.W.2d at 325.
The competing interpretations urged by the parties would each emasculate one part of the statute. We believe the statute can, however, be read to give effect to each of its provisions without doing violence to the remainder. See, e.g., O'Fallon v. Pollard, 427 N.W.2d 809, 811 (N.D.1988). We construe subsection (2) as a general provision, allowing conservators in all cases reasonable compensation for services rendered to the estate. However, in estates receiving VA funds the conservator's *342 fees are limited in certain respects by subsection (1). We believe the critical language in subsection (1) is "the compensation allowed from such money ... shall be limited to five percent of the amount of money received from the agency." The relevant inquiry in determining whether a particular charge violates the statute's five percent limitation is whether the fee will be derived from funds paid by VA.
We will review the various fee components charged by the Bank to determine whether each is allowable under the statute.
The Bank initially charges an up-front fee of five percent of each conservatee's VA benefits as they are received each month by the Bank. The statute expressly allows fees up to a maximum of five percent of VA benefits paid. Thus, this charge does not violate the statute so long as it is reasonable. Having taken the full five percent up front, however, the Bank is precluded from charging any additional fees "from such money."
We would caution the Bank, and other conservators, that any fees charged against VA funds, while limited by the five percent maximum of Section 30.1-29-14(1), N.D.C.C., are still subject to the reasonableness requirement of subsection (2). The Bank's arguments suggest its belief that subsection (1) creates an automatic entitlement to five percent of those funds merely for its efforts in receiving and depositing the check. The five percent, however, is merely a maximum on fees which can be charged. The Bank must demonstrate that it has performed services to the estate which have a reasonable value of at least that amount in order to earn the full five percent maximum compensation.
The next component of the Bank's fee is a seven percent charge against investment income. VA asserts that, because this income is derived in part from VA funds in the estate's corpus, the five percent limitation of subsection (1) applies and the Bank may charge no fees based upon this income.
We do not read the statute so narrowly. Subsection (1) provides that fees paid "from such money," referring to direct VA payments, are limited to five percent of the VA benefits. We see no similar limitation in the statute upon income derived from investment of those VA benefits by the conservator. Because the fees charged against investment income do not come directly from VA funds paid to the veteran's estate, but rather from the investment income itself, we conclude that they are not subject to the five percent limitation of subsection (1). They do, of course, remain subject to the reasonableness requirement of subsection (2).
We note that early versions of the Veterans Guardianship Act did limit fees to five percent of the ward's annual income. See 1931 N.D.Sess. Laws, ch. 309, § 11. If the Legislature had intended to continue such a limitation on investment income, it easily could have included a specific provision to that effect. See State v. Hansen, 444 N.W.2d 330, 333 (N.D.1989).
The Bank also charges a percentage fee on the corpus of the estate. Because a portion of this fee is necessarily based upon, and will be paid from, VA payments included in corpus which have already been subjected to the full five percent fee allowed by Section 30.1-29-14(1), N.D.C.C., any further percentage fee would be in violation of the statute. Clearly the Legislature's intent would be circumvented if the conservator were allowed to charge the maximum five percent fee on VA benefits as each monthly check arrives, and then at the end of the year tack on an additional percentage fee based upon those same funds as part of the corpus. We hold that, to the extent those funds have already been subjected to the full five percent statutory maximum fee, there may be no additional fees charged as a percentage of the corpus.
The Bank also charges these estates a "flat" $150 administration fee, which the Bank asserts is to cover preparation of tax returns, accounting, auditing, and other services. The Bank asserts that it must be *343 allowed this flat fee to recoup out-of-pocket expenses associated with these estates.
We do not read the statutory scheme to allow a "flat" fee, apparently charged to all conservatorships equally without regard to the difficulty or cost of those services to the particular estate. The record demonstrates that prior to 1988 the Bank charged each estate separately for items such as tax returns, so there can be no assertion that the Bank is unable to itemize those items and charge each estate its fair share. We do not, however, mean to imply that the Bank is not permitted to recoup its reasonable out-of-pocket expenses. If the Bank can segregate and itemize those expenses, it is entitled to reimbursement in a reasonable amount pursuant to Section 30.1-29-14(2), N.D.C.C.
Finally, the Bank charges a flat fee of $10 as a "holding fee" for insurance policies. As noted above, we do not believe the statutory scheme allows flat fees which have no actual correlation to the service rendered to the particular estate. The Bank may well be entitled to recoup its expense of "holding" insurance policies for the estates if it can demonstrate in each case the reasonableness of its fee in relation to the service it actually rendered to the particular estate.
We conclude that the Bank is to be permitted reasonable fees to administer the estates up to a maximum of five percent of the moneys received from the VA. The Bank may also be allowed a percentage of investment income as its fee for producing such income, subject to the reasonableness requirement of Section 30.1-29-14(2), N.D. C.C. To the extent that it has been allowed the five percent statutory maximum fee, the Bank is prohibited from taking an additional fee based upon a percentage of corpus. The Bank is further prohibited from charging a flat administrative fee or insurance policy holding fee. We reverse and remand for further proceedings in accordance with this opinion.
GIERKE, MESCHKE and LEVINE, JJ., concur.
VANDE WALLE, Justice, specially concurring.
I concur in the result reached by the majority opinion, and its rationale, except that portion which cautions that fees charged against VA funds are limited by both subsections (1) and (2) of § 30.1-29-14, NDCC. Insofar as VA funds are concerned, I believe the fees are governed exclusively by subsection (1) and the five percent limitation contained therein. I reach this conclusion for two reasons: First, the statute uses the term "shall be limited to" rather than language such as "shall not exceed." Although the distinction may appear to be one without a difference, the intent appears to be to allow a straight five percent for VA funds. Second, the ease of administration permitted by such a construction. The construction of the majority, on the other hand, creates an administrative burden which I believe the Legislature did not intend to apply in the case of VA funds. If the conservator cannot justify the five percent as being reasonable under subsection (2) as a result of the ordinary activity with the VA funds in the estate, the cost of having to prove the five percent is reasonable will more than make up for the difference and provide the justification. I believe the intention in enacting subsection (1) of § 30.1-29-14, NDCC, was that the conservator may charge five percent for VA funds and neither the conservator nor the VA will need to spend additional time and money in determining whether or not that fee is reasonable.
Finally, it appears to me that in some instances a minor flat fee ought to be accepted as per se reasonable, for the cost of attempting to prove the reasonableness of a minor fee may well exceed the fee itself, thus forcing the conservator to forgo any compensation for certain services.
NOTES
[1] Each veteran apparently also receives monthly social security benefits. The Bank also imposes a five percent up-front fee on those benefits as well.
[2] The appeals have been consolidated by stipulation of the parties. See Rule 3(b), N.D.R.App.P.